IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEFFREY LAMAR AURSBY | : | CIVIL ACTION |
| | : | |
| v. | : | No. 19-4849 |
| | : | |
| DAVID AUXTER, et al. | : | |

<u>**MEMORANDUM**</u>

**Chief Judge Juan R. Sánchez**                                                            **August 30, 2021**

      Pro se Plaintiff Jeffrey Lamar Aursby brings this civil action challenging the search of his vehicle and his subsequent arrest under the Fourth Amendment. In a June 29, 2020, Order, the Court granted Aursby leave to proceed in forma pauperis, dismissed his Complaint without prejudice, and granted Aursby leave to file an amended complaint. On June 30, 2021, the Court again granted Aursby leave to amend and directed him to file a second amended complaint within thirty days. Aursby filed the Second Amended Complaint on July 19, 2021. Aursby also filed Motion for a Preliminary Injunction. The Court will dismiss the Second Amended Complaint with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim. The Court will also deny as moot Aursby's Motion for a Preliminary Injunction.

**BACKGROUND**

      Jeffrey Aursby is a prisoner currently incarcerated at State Correctional Institution Dallas ("SCI Dallas") and brings this civil rights action pursuant to 42 U.S.C. § 1983 alleging violations of his Fourth Amendment rights. In the original Complaint, Aursby named six police officers with the Lower Merion Township Police Department as Defendants: (1) Michael Warren Young, Shield No. 22; (2) David Auxter, Shield No. 31; (3) Jeffrey Calabrese, Shield No. 140; (4) Eric Fries, Shield No. 100; (5) Shawn Wielage, Shield No. 138; and (6) Alexander Pratt, Shield No. 93. ECF

No. 2 at 2.¹ The original Complaint alleged Defendants violated Aursby's constitutional rights during the course of a traffic stop, the search of his vehicle, and his subsequent arrest.

On June 29, 2020, the Court granted Aursby leave to proceed in forma pauperis in this action, screened his original Complaint, and dismissed Aursby's claims against all Defendants without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim. June 29, 2020, Mem., ECF No. 14 at 5–9. At that time, the Court determined Aursby's original Complaint did not allege plausible claims because (1) he did not adequately allege specific behavior on the part of each police officer; (2) his original Complaint sought damages for his conviction and imprisonment, even though his conviction had not been overturned; and (3) he did not adequately allege the officers lacked probable cause to arrest him and search his vehicle. *Id.* at 2–3. The Court dismissed Aursby's claims without prejudice and granted him leave to file an amended complaint.

Aursby subsequently filed an Amended Complaint which included a number of exhibits, including (1) a "Police Criminal Complaint," (2) an "Application for Search Warrant and Authorization," (3) an "Affidavit of Probable Cause," (4) an "Application for Search Warrant – Continuation Pages," and (5) a "Docket Transcript" from his criminal case. *See* Am. Compl., ECF No. 16 at 6–14. Aursby then filed a Motion to Amend and Correct the Amended Complaint on November 12, 2020. In that Motion, Aursby "ask[ed] this Honorable Court for allowance to amend [his] Amended Complaint" based on "a number of erroneous arguments or/and citing cases." Pl.'s Mot. to Amend and Correct Am. Compl., ECF No. 17 at 1.

Before the Court had an opportunity to screen the Amended Complaint or consider Aursby's Motion to Amend and Correct the Amended Complaint, the Clerk of Court erroneously

---

¹ The Court adopts the pagination supplied by the CM/ECF docketing system.

docketed a February 2021, filing by Aursby as a Complaint in an entirely new matter rather than in this matter. *See* Compl., *Aursby v. Commonwealth of Pennsylvania*, No. 21-0991 (E.D. Pa. 2021) (hereinafter, "the 2021 Case"). A subsequent motion for injunctive relief filed on March 18, 2021, was also docketed in the 2021 Case. In response to these docketing issues, Aursby filed several letters in this matter to ascertain the status of the case and to understand the reason there were now two cases. *See* ECF Nos. 21, 22. By Order dated June 30, 2021, the Court directed the Clerk to correct the docketing errors in the 2021 Case and the instant matter. *See* June 30, 2021, Order, ECF No. 23 at 2. The Court also reviewed Aursby's Amended Complaint and Motion to Amend and Correct the Amended Complaint and granted Aursby leave to file a second amended complaint within thirty days. Aursby filed a Second Amended Complaint on July 19, 2021.

Aursby's Second Amended Complaint names the following Defendants, all of whom he alleges are police officers with the Lower Merion Township Police Department: (1) David Auxter; (2) Jeffrey Calabrese; (3) Eric Fries; (4) Shawn Wielage; (5) Alexander Pratt; and (6) Michael W. Young. Second Am. Compl., ECF No. 25 at 2–3. Aursby claims in the summer of 2018 he was working two jobs—one as a "third shift" cashier and one as a "first shift" delivery driver. *Id.* at 4. Aursby claims on the evening of August 4, 2018, while he was "working his second job as a delivery driver, [he] unconsciously fell asleep stopped in the middle of a line of backed up traffic." *Id.* He asserts he was awakened by Defendants Calabrese and Wielage and directed by Calabrese to pull his vehicle to the far side of the road and hand over his keys. *Id.* at 4, 11. Aursby claims he attempted to explain to the Officers that he fell asleep because he came from working a first and third shift at his job. *Id.* at 5, 13. According to Aursby, he was detained in his vehicle for approximately one hour by Calabrese, Wielage, and Young "without any . . . probable cause" because Defendants "assumed that [he] was under the influence of an intoxicant" since he "was

3

continuing to fall asleep[.]"[2] *Id.* at 5. Aursby claims Calabrese and Wielage were, at this point in the encounter, awaiting the arrival of Defendant Fries to assist with a field sobriety test. *Id.* at 5, 13.

Aursby alleges Fries took approximately forty minutes to an hour to arrive and administer the field sobriety test, but that Aursby ultimately passed the field sobriety test "completely." *Id.* Aursby asserts that even after he passed the test, he was not allowed to leave, and Defendants Fries, Young, and Pratt then told him they smelled the overwhelming odor of fresh unburnt marijuana his vehicle. *Id.* Aursby contends Defendants gave him "an option to consent to a vehicle search" or they were "going to impound/tow [his] vehicle pending a search warrant." *Id.* at 5–6. At that point, Aursby admits he "gave consent" for Defendants to search his vehicle, however, sometime after the search began, Aursby alleges that he "revoked [his] initial consent and informed" Defendants they would need to get a search warrant. *Id.* at 6. The Second Amended Complaint makes clear the Officers stopped the search in accordance with Aursby's revocation and then informed him they were going to tow and impound his vehicle pending a search warrant. *Id.* Aursby claims Defendants Auxter and Fries searched his vehicle on the following day "without an approved search warrant" and without a "magistrate judicial determination as to whether probable cause existed to even issue a search warrant." *Id.* at 6–7. Based on these alleged facts, Aursby seeks a declaration that his constitutional rights were violated as well as compensatory and punitive damages. *Id.* at 8.

The public docket for Aursby's underlying criminal proceeding related to the events of August 4, 2018, indicates he was charged with two counts of possession of a prohibited firearm,

---

[2] Aursby claims he assumed the Officers were writing him a traffic citation and "a little more sleep [would] not hurt," which is why he was continuing to fall asleep at that point. *Id.* at 5, 13.

one count of intentional possession of a controlled substance, one count of possession of a small amount of marijuana for personal use, and three counts of use or possession of drug paraphernalia. *See Commonwealth v. Aursby*, CP-46-CR-0006650-2018 (Montgomery C.P. at 2). The docket also shows a jury found Aursby guilty of the firearms charge and the intentional possession charge on July 30, 2019, and Aursby was sentenced to a term of imprisonment. *Id.* at 3–4. On July 7, 2021, the Superior Court of Pennsylvania affirmed Aursby's judgment of sentence. *See Commonwealth v. Aursby*, App. No. 901 EDA 2020, 2021 WL 2826473, at *1 (Pa. Super. Ct. July 7, 2021).

**DISCUSSION**

Aursby proceeds *in forma pauperis* and therefore, his Second Amended Complaint is subject to screening pursuant to 28 U.S.C. § 1915(e)(2)(B), which requires the Court to dismiss the Second Amended Complaint if, among other things, it fails to state a claim. Section 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Conclusory allegations and generalized statements do not suffice to state a claim. *See id.* As Aursby is proceeding *pro se*, the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011); *see also Vogt v. Wetzel*, No. 18-2622, 2021 WL 3482913, at *2 (3d Cir. Aug. 9, 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–45 (3d Cir. 2013)).

The Court will therefore "remain flexible, especially 'when dealing with imprisoned *pro se* litigants[.]'" *Vogt*, 2021 WL 3482913, at *2 (quoting *Mala*, 704 F. 3d at 244). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* However,

"'pro se litigants still must allege sufficient facts in their complaints to support a claim.'" *Vogt*, 2021 WL 3482913, at *2 (quoting *Mala*, 704 F. 3d at 245). "Liberal construction of a pro se amended complaint does not mean accumulating allegations from superseded pleadings." *Argentina v. Gillette*, No. 19-1348, 2019 WL 2538020, at *1 n.3 (3d Cir. June 20, 2019).

In the Second Amended Complaint, Aursby again seeks to bring claims for violations of his civil rights pursuant to 42 U.S.C. § 1983, the vehicle by which federal constitutional claims may be brought in federal court. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

Aursby's Second Amended Complaint raises Fourth Amendment claims related to what Aursby describes an unlawful detention and an unlawful search, seizure, and impoundment of his vehicle. ECF No. 25 at 7. He specifically asserts the Officers lacked reasonable suspicion or probable cause to detain him in his vehicle or to search the vehicle. *Id.* at 5–7. As the Court previously explained in its June 29, 2020, Memorandum, the Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. A seizure occurs when a government actor "by means of physical force or show of authority, has in some way restrained the liberty of a citizen."

*Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968). "A routine traffic stop is considered a seizure under the Fourth Amendment." *United States v. Wilson*, 413 F.3d 382, 386 n.3 (3d Cir. 2005).

The Fourth Amendment does, however, "permit[] brief investigative stops – such as the traffic stop in this case – when a law enforcement officer has 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *Navarette v. California*, 572 U.S. 393, 396 (2014) (quoting *United States v. Cortez*, 449 U.S. 411, 417–418 (1981)); *see also United States v. Cooper*, 293 F. App'x 117, 119 (3d Cir. 2008) ("Under Pennsylvania law, police officers may perform an 'investigative detention' of a vehicle if they have reasonable suspicion to do so."). "The 'reasonable suspicion' necessary to justify such a stop 'is dependent upon both the content of information possessed by police and its degree of reliability.'" *Navarette*, 572 U.S. at 397 (quoting *Alabama v. White*, 496 U.S. 325, 330 (1990)). "The Supreme Court has not reduced 'reasonable suspicion' to a 'neat set of legal rules,' preferring instead a 'totality of the circumstances' approach focused on 'whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing.'" *United States v. Stevenson*, 832 F.3d 412, 429 (3d Cir. 2016) (citing *United States v. Arvizu*, 534 U.S. 266, 273–74 (2002)). "Suspicion must be based on more than a 'mere hunch' to be reasonable, but 'the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard.'" *Id.*

Beyond challenging his detention, Aursby's Second Amended Complaint also seeks to challenge the search and seizure of his vehicle as unlawful. To the extent Aursby's Second Amended Complaint can be construed to raise them, claims for unlawful search and seizure and false arrest and imprisonment "require [the plaintiff] to establish that [the defendant] lacked probable cause to believe that [the plaintiff] committed a crime." *Simonson v. Borough of Taylor*,

839 F. App'x 735, 738 (3d Cir. 2020) (citing *James v. City of Wilkes-Barre*, 700 F.3d 675, 680 (3d Cir. 2012)) ("To state a claim for false arrest under the Fourth Amendment, a plaintiff must establish ... that the arrest was made without probable cause."); *Zimmerman v. Corbett*, 873 F.3d 414, 418 (3d Cir. 2017) ("To prevail on [a] malicious prosecution claim under § 1983, [a plaintiff] must establish that ... the defendant[s] initiated the proceeding without probable cause." (third alteration in original) (citation omitted)); *Paff v. Kaltenbach*, 204 F.3d 425, 435 (3d Cir. 2000) ("The Fourth Amendment prohibits a police officer from arresting a citizen without probable cause.").

As the Third Circuit has explained, "[b]ecause these claims 'hinge on probable cause, the constitutional violation question in this case turns on whether a reasonable officer could have believed that probable cause existed to arrest the plaintiff at that time.'" *Simonson*, 839 F. App'x at 738 (citing *Andrews v. Scuilli*, 853 F.3d 690, 697 (3d Cir. 2017) (citations and internal quotation marks omitted)). "Probable cause exists if, 'at the moment the arrest was made[,] . . . the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that [the suspect] had committed or was committing an offense.'" *Id.* (citing *Wright v. City of Philadelphia*, 409 F.3d 595, 602 (3d Cir. 2005) (alterations in original)).

Aursby's original Complaint in this action was sparse and contained few details regarding the events of August 4, 2018. His legal claims were unclear and undeveloped, and the Court's June 29, 2020, Memorandum and Order dismissing his claims and granting him leave to amend reflect the nature of his initial filing. However, Aursby's Second Amended Complaint is substantially more detailed and includes specific factual allegations regarding what occurred on August 4, 2018, between Aursby and the Defendant-Officers. The Second Amended Complaint also sets forth more

8

clearly the precise nature of the legal claims Aursby seeks to assert in this action. Specifically, Aursby is challenging (1) the fact that he "was detained inside [his] vehicle on the side of a busy roadway for approximately one hour" while the Officers acted "without any right nor probable cause" in detaining him; and (2) that the Officers unlawfully seized, impounded, and searched his vehicle without probable cause or reasonable suspicion of criminal activity. ECF No. 25 at 5–7.

The Court understands Aursby's Second Amended Complaint to challenge all of the Officers' conduct on August 4–5, 2018, on the basis that they lacked reasonable suspicion or probable cause for their actions from the moment they detained Aursby in his vehicle and thereby violated Aursby's Fourth Amendment rights. However, the Court is not obligated to credit Aursby's legal conclusions regarding the constitutionality of the detention and the search and seizure at issue here. *See Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (recognizing that the court need not credit a pro se litigant's "bald assertions" or "legal conclusions."). For the reasons set forth below, the Court concludes Aursby is precluded from relitigating the issue of whether the Officers violated his Fourth Amendment rights with respect to the events of August 4–5, 2018.

In its recent opinion affirming Aursby's judgment of sentence, the Pennsylvania Superior Court described the facts giving rise to Aursby's conviction on the charges of persons not to possess a firearm and unlawful possession of a controlled substance as follows:

> On August 4, 2018, around 12:00 p.m., Officer Jeff Calabrese and his partner were transporting a prisoner when they came upon a car stopped in the middle of the road and causing a backup. Officer Calabrese stopped and got out to see if the driver needed help. When he looked inside, he saw Aursby asleep in the driver's seat; he was the car's only occupant. Officer Calabrese knocked on the window but could not wake him up. Officer Calabrese also detected an "overwhelming" aroma of fresh marijuana coming from the car. Officer Calabrese walked back and told his partner about what he saw. Because they needed to leave, the partner radioed for more

units. Officer Calabrese and his partner then went back and "pounded" on the window. This time, Aursby woke up. When he did, Officer Calabrese asked him to turn off the car and hand him his keys. Aursby complied.

Officers Michael Young and Alexander Pratt arrived less than ten minutes later to take over the scene. Officer Young tried to speak with Aursby, but he had fallen back asleep. When Aursby woke up, he looked at Officer Young with a "blank stare" and did not appear aware of his surroundings, as he continued to fall back asleep. When he would respond, he made "unintelligible mumblings." During this time, Officer Young smelled an aroma of fresh marijuana coming from the car. He also noticed several air fresheners in the interior, some of which were hanging from the ceiling behind the driver's side. There was also a burnt air freshener in the CD player; when asked about it, Aursby said that he burnt it to put out more of an aroma like an incense. Finally, Officer Young also smelled the odor of cigars coming from the car.

Based on his observations, Officer Young suspected that Aursby was under the influence of marijuana or a controlled substance causing him to radio for an officer certified in Advanced Roadside Impaired Driving Enforcement (ARIDE), which involves field sobriety testing of drivers under the influence of drugs instead of alcohol. The only ARIDE-certified officer available that day was Officer Eric Fries. At the time, however, Officer Fries was at the other end of the township on another traffic stop. Officer Young had to wait for Officer Fries to become available. In the meantime, Aursby waited in his car while the officers stood around and talked to him. While they were waiting, Officer Pratt saw Aursby glance back to the rear passenger side area of his car about "half a dozen, ten times."

As soon as he was available, Officer Fries drove directly to Officer Young's location. He arrived around 12:53 p.m., about 40 minutes after Officer Young called for his assistance. As he approached the car, Officer Fries smelled the odor of fresh marijuana coming from the car. Like Officer Young, he noticed the many air fresheners in the car's interior but also that there was a cigar in the center ashtray. After introducing himself, Officer Fries asked Aursby to exit the car. After Aursby got out, Officer Fries asked him when was the last time that he smoked marijuana; he replied around 1:00 a.m. that morning. He also explained that he worked all night at a 7-Eleven and that was why he was so tired. Aursby then agreed to take the field sobriety tests and walked with Officer Fries to a nearby area to take the tests. At the end of the testing, Officer Fries found no evidence that Aursby was impaired.

Officer Fries, however, still wanted to search the car, telling Aursby that he could consent to the search or the officers would

10

>impound the car and apply for a search warrant. Officer Fries added that if he found only a small amount of marijuana or paraphernalia, he would not criminally charge Aursby with anything. Aursby consented.
>
>Officer Fries and another officer searched the front of the car first. Officer Fries found marijuana "roaches" inside an ashtray while the other officer found a digital scale in the glove compartment. Officer Fries then checked under the driver's seat and found a plastic bag, at which point Aursby said, "y'all not checking the back." Upon hearing this, Officer Fries stopped the search and walked back to Aursby. After Officer Fries explained consent searches, Aursby told him that he would need to apply for a search warrant. Officer Fries then had the car towed to an impound lot.
>
>The next day, Officer Fries searched the car after obtaining a warrant. He first searched the plastic bag under the driver's seat and found a baggie containing a substance appearing to be cocaine. He also found Aursby's identification card and several car parts that Aursby had said he was delivering for his job. In the rear of the car, Officer Fries found a bag of men's clothes on the floor of the passenger's side rear. After moving the clothes, he opened the floorboard compartment and discovered a loaded Smith & Wesson .22 revolver.

*Aursby*, 2021 WL 2826473, at *1–2.

On appeal, Aursby challenged "the denial of his motion to suppress the cocaine and [the] firearm, reasserting the two arguments that he made at the suppression hearing: (1) he underwent an arrest without probable cause waiting for Officer Fries; and (2) his consent was involuntary." *Id.* at *3. With respect to the 40–60 minute time period Aursby claims he was detained in his car without reasonable suspicion or probable cause, the Superior Court concluded Aursby was subjected only to an "investigative detention" supported by reasonable suspicion of unlawful activity during that time period and that this detention "never transformed into an arrest requiring probable cause" because the Officers acted reasonably and diligently in their investigation. *Id.* at *4–5. The Superior Court specifically found there was "no evidence that the detention was delayed for any improper reason" and any delay was attributable to the fact that Officer Fries was the "only officer available who was certified to perform the field sobriety testing and [he was] not . . . readily

11

available to do so" at the time it was determined by Officer Young that the test was needed. *Id.* at *5.

With respect to Aursby's claim that the Officers searched and seized his car without probable cause, the Superior Court cited the trial court's probable cause determination in Aursby's underling criminal case which provided:

> Authorities encountered [Aursby] passed out in his vehicle in the middle of a busy roadway and [Aursby] could not remain awake when he spoke with authorities. Multiple officers credibly testified that [Aursby's] vehicle had a distinct odor or marijuana and there were several air fresheners inside the vehicle which the officers testified were consistent with an attempt to conceal drugs. Therefore, these factors provided the officers with sufficient facts demonstrating that contraband would be found within the vehicle and provided authorities with probable cause to search the vehicle.

*Id.* at *6–7. On appeal, the Superior Court affirmed the trial court's determination that "the police had probable cause to believe that there was 'a fair probability' that contraband or evidence would be in found in Aursby's car." *Id.* at *7. The Superior Court separately concluded that even after the field sobriety tests "dispelled that Aursby was impaired, there remained sufficient circumstances for the police to conclude that there was contraband in Aursby's car based on (1) the smell of marijuana, (2) the presence of the air fresheners and cigar odor as masking agents, and (3) his admission that he had smoked marijuana earlier." *Id.* The Superior Court specifically held the trial court did not error in its "determination that the police did not violate Aursby's Fourth Amendment rights by searching his car without a warrant." *Id.*

In the present § 1983 action, Aursby clearly and specifically seeks to relitigate the constitutionality of his 40–60 minute detention and the search and seizure of his car under the Fourth Amendment. "Collateral estoppel, or issue preclusion, prevents a party who litigated an issue previously from rearguing that particular issue even if the other litigants were not party to

12

the earlier proceeding." *See James v. Heritage Valley Fed. Credit Union*, 197 F. App'x 102, 105 (3d Cir. 2006) (citing *Szehinskyj v. Atty. Gen. of the U.S.*, 432 F.3d 253, 255 (3d Cir. 2005)). The Third Circuit has previously held that "[a] finding in a prior criminal proceeding may estop an individual from litigating the same issue in a subsequent civil proceeding." *Id.* (citing *Emich Motors Corp. v. Gen. Motors Corp.*, 340 U.S. 558, 568–69 (1951)). In *James*, the Third Circuit explained the plaintiff had "raised and argued in the trial court that the evidence should be suppressed because the searches and seizures at issue presently [in the civil case] were constitutionally invalid[,]" but that the "trial court ruled on the challenges and found no Fourth Amendment violations." *Id.* at 106. The Third Circuit also noted that the plaintiff was a party to the criminal proceeding, was represented by counsel, and had a full and fair opportunity to litigate the issue after he appealed on the same issue. *Id.* The Third Circuit held the plaintiff was precluded from reasserting the Fourth Amendment violations that were rejected in his criminal case. *Id.*

Multiple "[f]ederal courts within this Circuit have repeatedly made similar findings" that an individual was estopped from litigating a Fourth Amendment claim where the issue was previously litigated in a prior criminal proceeding. *See Briggs v. Godby*, Civ. A. No. 08-5239, 2009 WL 4756390, at *6 (E.D. Pa. Dec. 10, 2009) (collecting cases as follows: *Crawford v. Frimel*, Civ. A. No. 07-3452, 2009 WL 1904613, at *2 (3d Cir. Jul. 2, 2009) (prior determination of probable cause issue during suppression hearing in criminal proceedings barred subsequent civil suit raising the probable cause issue); *Berry v. Chaves*, Civ. A. No. 02-893, 2003 WL 21497557, at *1–2 (E.D. Pa. Jun.30, 2003) (holding plaintiff's section 1983 claim that searches of his residence and car were unconstitutional were barred because the constitutionality of those actions were fully considered and upheld during a suppression motion in plaintiff's underlying federal criminal proceedings); *Doswell v. City of Pittsburgh*, Civ. A. No. 07-0761, 2009 WL 1734199, at

\*6 (W.D. Pa. Jun.16, 2009) (finding that collateral estoppel barred plaintiff's section 1983 claim for malicious prosecution based on an unduly suggestive photo array where, during his criminal trial, the state court considered and denied a motion to suppress that photo array); *Ashford v. Skiles*, 837 F. Supp. 108, 112 (E.D. Pa.1993) (holding that a finding of probable cause made in a state court criminal suppression hearing, which afforded the parties a full and fair opportunity to litigate the issue, may be an "appropriate basis" for application of collateral estoppel to a section 1983 claim)).

In assessing whether Aursby is estopped from relitigating these issues in this § 1983 action, the Court "must give the state court's judgment the same preclusive effect as would be given the judgment by a court of that state." *See James*, 197 F. App'x at 105 (citing *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984)). "Under Pennsylvania law, the elements of collateral estoppel are (1) the issue decided in the prior adjudication was identical to the one presented in the later action; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication; and (4) the party against whom it is asserted had a full and fair opportunity to litigate the issue in question in a prior action." *Id.* at 105–106 (citing *Walker v. Horn*, 385 F.3d 321, 337 (3d Cir. 2004)). Upon review of the Second Amended Complaint and the Superior Court's recent opinion affirming Aursby's judgment of sentence, it is clear that all the required elements for application of the doctrine of collateral estoppel are met, and Aursby is precluded from relitigating the Fourth Amendment issue in this § 1983 action.

Aursby's Second Amended Complaint alleges he was detained, searched, and seized by the Officers without reasonable suspicion or probable cause in violation of the Fourth Amendment. The Superior Court opinion makes clear Aursby, who was a party to the prior litigation and who

was represented by counsel in both the underlying criminal proceeding and on appeal, moved to supress the evidence against him (the cocaine and the firearm) by challenging the constitutionality of his detention and the search of his vehicle under the Fourth Amendment—specifically challenging whether the Officers had reasonable suspicion or probable cause—the identical constitutional challenge Aursby raises in the Second Amended Complaint. *See Aursby*, 2021 WL 2826473, at *2–7.

The trial court conducted a hearing on the motion and ultimately denied Aursby's attempts to supress this evidence on the basis that the Officers' actions were constitutionally invalid under the Fourth Amendment. *Id.* at *7. Aursby was subsequently convicted by a jury on these charges, and the Superior Court affirmed the denial of the suppression motion on appeal, concluding the Officers had reasonable suspicion and probable cause for the search and detention, and specifically concluding there was "no error in the trial court's determination that the police did not violate Aursby's Fourth Amendment rights by searching his car[.]" *Id.* Having had a full and fair opportunity to challenge the constitutional validity of the Officers' actions under the Fourth Amendment and litigate the issue to a final judgment,[3] Aursby is now collaterally estopped from relitigating the same constitutional challenges via a § 1983 action. Accordingly, the Court will dismiss Aursby's Fourth Amendment claims for failure to state a claim pursuant to §1915(e)(2)(B)(ii). The dismissal of these claims will be with prejudice as it appears amendment would be futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

---

[3] With respect to the finality of the judgment, "[i]t is generally accepted that 'denial of a suppression motion followed by a conviction is a final judgment for collateral estoppel purposes.'" *Briggs*, 2009 WL 4756390, at *6, n.5 (citation omitted). Moreover, "[t]he Third Circuit has conclusively held that collateral estoppel 'does not require the entry of a judgment, final in the sense of being appealable[,]' . . . [r]ather, 'final judgment[ ] includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect.'" *Id.* (citing *In re Brown*, 951 F.2d 564, 569 (3d Cir. 1991)).

Aursby's Second Amended Complaint also purports to bring claims under Article I, Section 8 of the Pennsylvania Constitution. ECF No. 25 at 8. Because there is no private right of action for damages under the Pennsylvania Constitution however, these claims are dismissed with prejudice as legally frivolous. *See Plouffe v. Cevallos*, 777 F. App'x 594, 601 (3d Cir. 2019) ("[N]or is there a private right of action for damages under the Pennsylvania Constitution."); *Pocono Mountain Charter Sch. v. Pocono Mountain Sch. Dist.*, 442 F. App'x 681, 687 (3d Cir. 2011) ("No Pennsylvania statute establishes, and no Pennsylvania court has recognized, a private cause of action for damages under the Pennsylvania Constitution.").

**CONCLUSION**

The Court will dismiss Aursby's Second Amended Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim. Aursby's Motion for a Preliminary Injunction will also be denied as moot in light of the Court's dismissal of this case.

An appropriate Order follows.

                                                              BY THE COURT:

                                                               /s/ Juan R. Sánchez
                                                               Juan R. Sánchez, C.J.